## OKLAHOMA CITY et al. v. JOHNSON.

No. 27791.   Sept. 27, 1938.

A. L. Jeffrey, Municipal Counselor, and A. P. Van Meter, Asst. Municipal Counselor, for plaintiffs in error.

W. B. M. Mitchell, for defendant in error.

GIBSON, J.   Oklahoma City passed an ordinance regulating the operation of barber shops in that city. The defendant in error, Art Johnson, owner of several shops, was arrested and threatened with criminal arrest for violating the provision of the ordinance which fixed the hours shops should open and close on week days, holidays, and days preceding holidays.

To prevent such threatened arrests and the consequent interference with his business, Johnson, after trial, obtained a permanent injunction against the city, prohibiting the enforcement of this provision as to him. From that judgment, the city appeals.

The city here contends that it has ample charter, constitutional, and statutory authority under its police power to regulate the hours barber shops shall stay open, since under such power it may pass such laws in relation to the public health, morals, safety, and general welfare of its inhabitants as its legislative body, in view of an expanding society, with changing social conditions, may deem proper. It states the well-recognized rule that the courts should not interfere with such laws unless it is palpably clear that such legislation has no real or substantial relation to such objects.

Johnson, contending here, as in the lower court, that the provision of the ordinance violates both the federal and state Constitutions, asserts that the ordinance, as to the prohibition on the hours he should do business, is unreasonable, arbitrary, unfair, and an unlawful interference with private business, a property right. He invokes the Fourteenth Amendment to the federal Constitution and section 2, article 2, of the state Constitution, which particularly recognizes the right of all persons to the enjoyment of the gains of their own industry. His testimony, as considered at the trial, was to the effect that unless he were allowed to operate later than the ordinance permitted, he could not continue successfully to operate his shops. For the city it was shown that probably 90 per cent. of the barbers favored the ordinance.

It is not contended in this case that the hours of labor of barbers or wages are involved. Only the question of the right to regulate the number of hours the business is to be conducted is presented.

Questions practically identical have been passed upon by courts, state and federal, in several of the states. The minority view supports the city's contentions; the majority supports Johnson's position. In Falco v. Atlantic City (N. J.) 122 Atl. 610, it is said that such regulation of barber shops is within the police power, because of the fruitfulness of many barber shops as spreaders of certain forms of contagious disease. The argument, however, there made that because of the necessity of inspection to prevent disease it follows that hours should be curtailed, is not appealing. Certainly it is not expected that an inspector should be constantly on guard in each shop, and certainly it would give more opportunity for an inspector to "drop in" for an inspection if the hours were longer than if shorter.

In some of the cases it has been suggested that barber shops have been loafing places for undesirables, immoral or lawbreaking persons, and therefore subject to regulation. So in the case at bar it is contended that another factor for regulating the hours is "the fact that barber shops which remain open at night usually afford convenient places of rendezvous for professional gamblers, thieves, and other law violators."

This contention cannot be admitted as true. It is said in Chaires v. Atlanta (Ga.) 139 S. E. 559, 55 A. L. R. 230:

"Persons engaged in the operation of barber shops are carrying on a perfectly lawful business. It is not, in any sense of the word, a noxious business. In fact, the business may be regarded as indispensable in the present development of our civilization, if we have regard to the requirements of decency and cleanliness."

In Ex parte Jentzsch (Cal.) 44 P. 803, it is said:

"The laboring barber, engaged in a most respectable, useful, and cleanly pursuit, is singled out from the thousands of his fellows in other employments, and told that, willy nilly, he shall not work upon holidays and Sundays after 12 o'clock noon. His wishes, tastes, or necessities are not consulted. If he labors, he is a criminal. Such protection to labor, carried a little further, would send him from the jail to the poorhouse."

The court held the law unconstitutional as "special, unjust, and unreasonable," working an invasion of individual liberty, since it was based upon no distinction to justify singling out that class of laborers.

Answering the contention that such regulation had relation to inspection, the Supreme Court of Wyoming said:

"Perhaps, to those who are familiar with the times and methods of inspecting barber shops, this reason would seem absurd." State ex rel. Newman v. City of Laramie (Wyo.) 275 P. 106.

Thus the case last cited severely criticizes the New Jersey case, supra. It further shows that barber shops are not to be classed with pawn shops, junk dealers, second-hand shops, laundries, jewelry auctions, pool and billiard halls, or soft drink establishments, which have generally been held to be within the regulatory power of police legislation as to closing hours.

Respecting, as we do, the legislative authority of the city, and recognizing its right to determine what laws shall be passed, we yet can find no just reason for the provision of the ordinance here considered. Elastic as may be the police power to meet the imperative demands of our complex city life, and expanding as it is to meet the actual requirements of an advancing civilization, it still must yield to those rules of fundamental law designed to curb and check its unwarranted exercise of unreasonable and arbitrary enactments. Knight v. Johns (Miss.) 137 So. 509; City of Denver v. Schmid (Colo.) 52 P.2d 388; Ernesti v. Grand Island (Neb.) 251 N. W. 899.

The majority decisions are based upon the well-recognized rule that the right to carry on a legitimate business is a property right protected against unwarranted and arbitrary interference by the Legislature. This court has definitely recognized such right in relation to the occupation of barbers.

"The right to practice the trade of barbering is one of the common occupations of life. The barber has a legal right to practice his trade without hindrance." Nation v. Chism, 154 Okla. 50, 6 P.2d 766.

The case of West Coast Hotel Co. v. Parrish, 300 U. S. 379, 81 L. Ed. 703, did not involve the question of opening and closing hours, but hours of labor and wages, which concededly are not in the case here. It will be noted that in that case the United States Supreme Court affirmed the decision of the Supreme Court of Washington, 185 Wash. 581, 55 P.2d 1083, on the points respecting wages and hours. When the question of restricting opening and closing hours was involved, the Supreme Court of Washington, recognizing the general principles involved in the West Coast Hotel Case, held such special regulation as involved here unconstitutional. See Patton v. Bellingham (Wash.) 38 P.2d 364.

Additional authorities supporting the majority view are: Knight v. Johns (Miss.) 137 So. 509; State v. Johannes (Minn.) 259 N. W. 537; Ganley v. Claeys (Cal.) 40 P.2d 817; City of Alexandria v. Hall (La.) 131

So. 722; City of Denver v. Schmid (Colo.) 52 P.2d 388; Ernesti v. Grand Island (Neb.) 251 N. W. 899; McDermott v. Seattle (D. C.) 4 Fed. Supp. 855.

Without reviewing the authorities in detail, we believe that the foregoing cases recognize the general right of the city to regulate, and also recognize great presumptions of legality, proper classification, and necessity that should be attributed to legislative acts of the city, but rightfully hold that provisions such as are under consideration here are unreasonable and arbitrary within the rule established both by the federal and state courts.

The judgment of the district court is accordingly affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, and CORN, JJ., concur. PHELPS, HURST, and DAVISON, JJ., dissent.

PHELPS, J. (dissenting). I cannot concur in the conclusion reached in the majority opinion for the reason that I am unable to harmonize the rules of law laid down in the opinion with the previous announcements of this court.

In C. C. Julian Oil & Royalties Co. v. City of Oklahoma City, 167 Okla. 384, 29 P.2d 952, in the fourth paragraph of the syllabus, we said:

"If there is room for fair debate as to whether a municipal ordinance is arbitrary or unreasonable, the court will not substitute its own judgment for that of the legislative body charged with the primary duty and responsibility of determining the question."

I cannot agree that in the enactment of this ordinance the city exceeded its police powers granted by the Constitution, statutes, and general rules of law.

In Anderson-Kerr, Inc., v. Van Meter, 162 Okla. 176, 19 P.2d 1068, in upholding the right of the city to pass an ordinance regulating the drilling of oil wells within the city limits, in the first paragraph of the syllabus, we said:

"It is a proper exercise of the police power of the city, which power extends not only to the provisions of the public safety, health, and morals but to the common convenience, prosperity, and welfare of the public."

These decisions merely follow the often announced rules of law laid down by this court. In McCurley v. City of El Reno, 138 Okla. 92, 280 P. 467, we cited with approval the opinion of the Supreme Court of California in Miller v. Board of Public Works, 234 P. 381, wherein it was said:

"The police power of a state is an indispensable prerogative of sovereignty and one that is not to be lightly limited. Indeed, even though at times its operation may seem harsh, the imperative necessity for its existence precludes any limitation upon its exercise save that it be not unreasonable and arbitrarily invoked and applied." (Citing cases.)

In our approval of the above language of the Supreme Court of California, in regard to the police power, we said:

"* * * It is perhaps the one power which, under the interpretation of our courts, has kept step with the advance in civilization, and is now regarded as sufficiently elastic to meet the imperative demands of our complex city life." (Citing cases.)

In the ninth paragraph of the syllabus of the above-quoted California case, that court said:

"A large discretion is vested in the Legislature in reference to exercise of police power, and every intendment is to be indulged in favor of its validity, and it is only when it probably has no substantial relation to public health, safety, morals, and general welfare that it will be nullified by the court."

It is therefore my conclusion that we are not justified in substituting our judgment as to the wisdom or propriety of this ordinance passed by the lawmaking body of the city. That is their responsibility, so long as they do not exceed or abuse the authority given them under their police powers. In view of the above-cited cases, and many more that might be cited, I cannot agree that in passing the ordinance in question the city exceeded its police powers. I therefore most respectfully dissent.