# City of Louisville v. Kuhn.

Dec. 6, 1940.

Churchill Humphrey, Judge.

Luther Roberts for appellant.

L. D. Greene for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The legislative department of the city of Louisville in April 1938 enacted "An ordinance pertaining to the regulation of sanitary conditions, public health, public safety, public welfare, public morals, business hours and conduct of barber shops." The enacting portion of the ordinance was preceded with eleven "whereases" employed, no doubt, to stabilize the confidence of the enacting board or boards in its authority to prescribe as is done in Section III of the ordinance, which says: "That it shall be unlawful for any person, firm, association or corporation to keep open any barber shop or to conduct any barber business therein, within said city upon any of the hereinafter mentioned holidays or on any other day before the hour of eight oclock A. M., or after the hour of six oclock P. M., except Saturdays and the day preceding holidays or after the hour of eight oclock P. M. on Saturdays and the day preceding holidays."

Section V penalizes violations of all prohibitory provisions of the ordinance, including Section III, and subjects the violator to a fine of not less than $10 nor more than $100; or by imprisonment for a period not exceeding thirty days, or both fine and imprisonment, and makes each day during which the ordinance is vio-

lated a separate offense. Other provisions relate to prescribed sanitary precautions, inspection of the premises, licensing of members of the trade or occupation, and other requirements looking to the preservation of sanitary conditions, and the qualification of those engaged in the trade as a means of promoting sanitation and the safety of patrons.

This action was filed in the Jefferson circuit court by appellee as plaintiff below, against the appellant and defendant below, and in plaintiff's petition he averred that he was a barber by trade, had complied with regulatory laws affecting his qualification as such, and had obtained a license to operate a barber shop in the city of Louisville. He averred that Section III, supra, of the ordinance was invalid as an improper exercise of the Police Power, in that it invaded fundamental rights guaranteed to him and others similarly situated, by both the Federal and our State Constitutions. The petition was amended the second time, and an answer and responsive pleadings were filed to an issue. The trial court, upon submission to it of the demurrer to the petition and other interlocutory motions, overruled it and sustained the prayer of plaintiff's petition by adjudging the attacked section void, which was followed by granting a permanent injunction against defendant's prosecution as he had averred was threatened, thereby making permanent a temporary restraining order to the same effect granted upon the filing of the petition. From that judgment defendants prosecute this appeal.

It is at once apparent that we are again confronted with what we in the case of Ashland Transfer Company v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534, and other courts in their respective jurisdictions, describe as the "Police Power" possessed by the sovereignty and by its subordinate units when the power was properly delegated to them. We found that it was indefinable or, if definable, at all, it was a difficult task to do so. A reading of judicial opinions and authorized texts will reveal that to a degree and in a sense, practically every law enacted by the legislative departments in our form of government emanates from authority conferred by and springs from the exercise of the Police Power. Its fundamental purpose is the bettering of the conditions of living, and involves a multiplicity of objects looking to that end—chiefly the im-

provement of morals, health, education, co-operation, and all things else tending to make government ball bearing and smooth running. However, notwithstanding the scope so embraced by the power under consideration it possesses its limitations as is guaranteed to the citizen by Bills of Rights contained in both the Federal and our State Constitutions, each of which proclaim and declare as an inviolate right that the citizen's property and personal rights may not be taken away from him without due process of law. Hence, Section 26 of our Constitution prescribes that "To guard against transgression of the high powers which we have delegated, we declare that everything in this Bill of Rights is excepted out of the general powers of government, and shall forever remain inviolate; and all laws contrary thereto, or contrary to this Constitution, shall be void."

The right of acquiring, possessing and protecting property, and of pursuing one's safety and happiness is guaranteed by Section 1 of our Constitution (a part of our Bill of Rights) and its Section 2—also a part of the Bill of Rights—prescribes that "absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority." In dealing with the scope and breadth of the authority of legislatures as founded on the doctrine now under consideration, the courts, without exception, not only hold that a law-making body may not transgress the inhibitions contained in Bills of Rights as incorporated in Constitutions, but also hold that when it is attempted it is within the power of courts to so declare and hold enactments in violation of the Bill of Rights illegal and therefore void. Up to this point there is and can be no dissent. Necessarily, from what we have said, the Police Power possessed by legislative bodies authorizes them in proper instances to enact laws relating to almost if not all professions, and a multiplicity of other subjects affecting the public weal and for its betterment. The authority conferred by the doctrine under consideration, if conditions demand it, would approve complete prohibitive legislation of some activities, or in certain areas if based upon sufficient reasons, which it is not necessary for us to refer to.

Likewise, activities and engagements that are permissible may be regulated or licensed, or otherwise dealt

with so as to improve conditions calculated to contribute to the public welfare. Such regulations may relate to qualifications of those engaged in the particular activity, business or profession, and sometimes it may authorize the limitation of hours in which a particular calling may be prosecuted, and a prohibition of its prosecution within other periods of the day. But, whatever direction or phase that the legislation may take—whether of a prohibitory or regulatory character—it must not exceed or go beyond the limits of reasonability, or be rested upon assumed grounds for which there is no foundation in fact, nor may the legislation as enacted be more destructive of the interest of the public at large than beneficial.

The particular subject matter and occupational profession involved in this case, as we have seen, is that of the trade of a barber, the services of which is an admitted necessity. It is also admitted—but if not it should be—that the usual, proper, and ordinary method of conducting the business is not only a necessity but possesses no inherent vice resulting in possible detriment to the body politic, except as related to the sanitary conditions of the premises, and the qualifications of those engaged in it. Therefore, in so far as the provisions of the attacked ordinance relate to such matters there can be no legal objections raised thereto. The right as emanating from the Police Power to so regulate such particular features of the barbering business is everywhere upheld and it was done by this court in the case of Commonwealth v. Ward, 136 Ky. 146, 123 S. W. 673. But the question of hours within which the prosecution of the business may be conducted and correspondingly prohibited during other hours of the day, was not involved in that case, and which makes our opinion rendered therein completely inapplicable to the question here involved. Manifestly, and clearly, there is a broad distinction between *qualifications* for engagement in, and *conditions under which* a particular business may be conducted, and the hours during which it may be done. If it is a lawful one, and necessary for the comfort and convenience of members of the public—though operating under regulatory requirements for guaranteed qualifications of those engaged in it—the hours that may be devoted to its prosecution may not be unreasonably interfered with by the arbitrary ipse

dixit of the legislative branch of the government, there being no plausible ground therefor. It is true that legislative bodies possess what the opinions designate as "the primary authority" to determine whether or not the particular enactment is justified under authority conferred by the Police Power. Therefore, when the law-making department has so determined, the rule is, that the courts should hesitate to declare otherwise.

But the power of the courts to so declare is not thereby denied or taken away. In determining such questions judicial knowledge may be consulted and relied on, and if from that knowledge, or any other source, it appears that the grounds upon which the legislature based its action are arbitrary and unfounded in fact it is not only the right but the duty of courts to say so and declare the consequences. Through avenues to which resort may be had we know that the requirement that barber shops shall be closed at 6 o'clock P. M., and remain so until 8 o'clock A. M., the following day, results in the deprivation of possibly the most profitable hours for the prosecution of the business than would result from prohibiting its conduct during any other portion of the twenty-four hours of the day. Laborers, businessmen, traveling men, and most all others making up the sum total of patrons of such institutions apply for the services received between the hours of, say 6 and 9 o'clock P. M., and 5 and 9 o'clock A. M. It is not made to appear—and from the same sources we conclude it is untrue—that during such prohibited hours, or others approximating them, a barber shop conducted in the usual and ordinary way possesses any vice that could remotely threaten the standards of pure and upright living, or the public welfare. On the contrary, to deny the right of either the barber or of his patrons to render and receive such services within the reasonable time indicated would be followed by incalculable inconvenience and detriment to both the barber and his patrons. Besides, such inhibitive provisions in the circumstances limit pro tanto the right of all members of the profession to acquire property, which is guaranteed to them by our Constitution in that portion of it containing the Bill of Rights. They are also thereby deprived of such privilege without due process of law, provided such deprivation is unjustified under the authority conferred by the Police Power, which the city invokes in this case.

Turning now to the adjudged law applicable to the concrete question—i. e., the limiting of hours within which the business of one engaged in the profession of barbering may conduct his business—we find that the courts of every state in the Union before which the question was presented (except one and possibly two) hold that when the prohibited hours are such as to be unreasonable, followed by the difficulties and inconveniences supra, the prohibitive enactment is invalid and void. That such is the declared law upon the concrete question is shown in annotations in 98 A. L. R. beginning on page 1088, where in its subdivision IV, beginning on page 1093 of that volume, the annotator discusses the question of ''Regulating Hours of Closing'' as applicable to the operation of barber shops. In the course of the discussion of that subdivision of the annotation it is said: ''The majority of the cases which have considered the validity of ordinances containing provisions regulating the closing hours of barber shops have reached the conclusion that such provisions are an unconstitutional invasion of the right to earn a living, and consequently a denial of due process, having no reasonable relation to the admittedly proper exercise of the police power in regulating the profession of barbering. McDermott v. Seattle, (1933, D. C.) 4 F. Supp. 855; Chaires v. Atlanta (1927) 164 Ga. 755, 139 S. E. 559, 55 A. L. R. 230; Alexandria v. Hall (1930) 171 La. 595, 131 So. 722; Knight v. Johns (1931) 161 Miss. 519, 137 So. 509; Patton v. Bellingham [179 Wash 566, 38 P. (2d) 364] (reported herewith) [98 A. L. R.] ante, 1076; State ex rel. Newman v. Laramie (1929) 40 Wyo. 74, 275 P. 106. In Chaires v. Atlanta (1927) 164 Ga. 755, 139 S. W. 559, 55 A. L. R. 230, an ordinance requiring barber shops to close at 7 o'clock P. M., except on Saturday, when they should close at 9 o'clock P. M., and not to open before 5:30 A. M., was held to be invalid as an unreasonable regulation, since the service rendered by such shops might be regarded as indispensable in the present development of our civilization, and by the enforcement of such ordinance that service would be denied a large class of citizens whose employment requires their attendance until an hour later than the closing hour prescribed by the ordinance.''

The opinion in the case of Patton v. City of Bellingham, 179 Wash. 566, 38 P. (2d) 364, 366—immediately

preceding the annotation and reported in the volume referred to on page 1076—deals with an ordinance prescribing it to be unlawful to open a barber shop earlier than 8 o'clock A. M., or to close it later than 6 o'clock P. M., which are the identical provisions of the ordinance now under consideration. It held the ordinance, or rather the hours fixed therein, as being unreasonable and arbitrary, and, therefore, invalid. The opinion dealt with and answered all the arguments advanced in support of the ordinance that are made by counsel for the city in this case, as well as others that are not here made and it overruled each and all of them as being insufficient to sustain the attacked enactment—considering they were both fanciful and fallacious. It answered one of the arguments made in this case to the effect that the barbers themselves needed rest and recreation in order to be in the most perfect condition to serve their patrons by observing that if the argument possessed merit—which was questionable—the situation could then be remedied by the procuring of shifts of active barbers, thereby furnishing periods for the supposed needed recreation and rest which counsel argued therein, and also here, are necessary. The court in that case furthermore said: "The grant of police power to a city carries with it the necessary implication that its exercise must be reasonable," and in support of that statement it cited the text in Volume 2 of Dillon on Municipal Corporations, 2d Ed., Section 589, and the text in 43 C. J. pp. 213 and 228. Also the text in Volume 2 of McQuillan on Municipal Corporations, 2d Ed., Section 762, and the case of Adkins v. Children's Hospital, 261 U. S. 525, 43 S. Ct. 394, 402, 67 L. Ed. 785, 24 A. L. R. 1238, and incorporated as a part of its opinion this excerpt from that Supreme Court opinion: "To sustain the individual freedom of action contemplated by the Constitution is not to strike down the common good, but to exalt it; for surely the good of society as a whole cannot be better served than by the preservation against arbitrary restraint of the liberties of its constituent members."

The opinion then proceeds to state that the occupation of barbering is a lawful business and "so far from being an obnoxious one, it is now considered well-nigh indispensable." It was also recognized by that court that the Police Power possessed by the sovereignty could well be exercised in prescribing *qualifications* for

the members of the profession, as well as regulations looking to the *sanitary condition* of shops, tools and implements used and employed in the prosecution of the business, but that it would not necessarily follow from such requirements that the prosecution of the business might be prohibited and the shops closed during hours from which no evil influence might arise, or could reasonably be expected or anticipated. Finally, the court in that case quoted with approval from an opinion by the District Court of the United States for the District of California in the case of Yee Gee v. City and County of San Francisco, 235 F. 757, saying: "The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with or abridgment of such right is an invasion thereof, and a restriction of the liberty of the citizen as guaranteed by the Constitution." A consulting of the cases and authorities herein cited will clearly demonstrate that the overwhelming weight of authority is in accord with the Supreme Court of the state of Washington in the case referred to as to each and every proposition it advanced, the court of New Jersey to the contrary notwithstanding.

The one case cited in the annotation to which we have referred, as upholding this limiting of hours for the prosecution of the barbering business, is that of Falco v. Atlantic City, 99 N. J. L. 19, 122 A. 610, which followed the prior case from the same court of La Porta v. Board of Health, 71 N. J. L. 88, 58 A. 115. The possible case—referred to infra—as upholding the same character of legislation is that of Wilson v. City of Zanesville, 130 Ohio St. 286, 199 N. E. 187. On the general question of the extent of the Police Power and prescribing the guards thrown around it beyond which legislation is inhibited, we cite the domestic case of Tolliver v. Blizzard, 143 Ky. 773, 137 S. W. 509, 34 L. R. A., N. S., 890, and the case of Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. Ed. 385. In the Tolliver case it was declared, in substance, that if the enactment was referable to the Police Power, then the court must be able to say that it tends in some degree toward the prevention of offenses, or the preservation of the public health, morals, safety, or welfare of the people as based upon some reasonable grounds. Therefore, if it is apparent that there is no plausible or reasonable connection between

the provisions of the statute and the supposed evils to be suppressed there exists no authority for its enactment. That principle has been declared by every opinion rendered by this court dealing with the question, and we have been able to find none announcing a contrary doctrine, from all of which it may confidently be said that the legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon *lawful occupations.* Other phases of the question, but not relating to the concrete situation here involved—as applicable to the business of barbering— may be found discussed in annotations in 20 A. L. R. 1111; 55 A. L. R. 242; 79 A. L. R. 1126, and 90 A. L. R. 814. This opinion might be extended by collating other authorities supporting the propositions advanced, but they would be but cumulative and, therefore, serve no useful or educational purpose in substantiating the conclusion that the trial court was correct when it determined that Section III of the involved ordinance was invalid as a proper exercise of the Police Power, since the restrictions therein contained are unreasonable as applicable to the lawful and necessary business of the involved occupation of barbering.

Some argument is made that the ordinance is invalid, since its title is broad enough to embrace the services of a beauty shop as a part of the profession, and which the ordinance did not attempt to regulate or restrict in any particular, but we have deemed it unnecessary to enter into a discussion of that question, since the reasons we have advanced are, as we conclude, amply sufficient to sustain the judgment appealed from.

Wherefore, for the reasons stated, the judgment is affirmed.

The Whole Court sitting, except Judge Perry, who was absent.

Judge Cammack dissenting.