Bell, J.
 

 The single question presented by this record is the constitutionality of an ordinance, Section 523-1, Code of Ordinances of the city of Cincinnati, making it unlawful to permit barber shops to be open for business during hours other than specified therein.
 

 The city of Cincinnati is a home rule city governed by a charter duly adopted in accordance with the provisions of Section 7, Article XVIII of the Ohio Constitution.
 

 Section 34, Article II of the Ohio Constitution reads as follows:
 

 “Laws-may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employees; and no other provision of the Constitution shall impair or limit this power.”
 

 The word “laws” as used in this section does not embrace municipal ordinances, but defines the legislative power of the General Assembly only.
 
 Village of Brewster
 
 v.
 
 Hill,
 
 128 Ohio St., 354, 191 N. E., 366;
 
 Wilson
 
 v.
 
 City of Zanesville,
 
 130 Ohio St., 286, 199 N. E., 187.
 

 This ordinance, passed by municipal authority, cannot be sustained under that provision of the Constitution.
 

 This leaves the question of whether the ordinance can be sustained as a valid exercise of the police power.
 

 In the case of
 
 Wilson
 
 v.
 
 City of Zanesville, supra,
 
 this court considered an ordinance passed by the city •of Zanesville which in all essential respects is identical with the ordinance here in question. A majority of the court reached the conclusion that the ordinance was
 
 *538
 
 a valid exercise of the police power not in conflict with constitutional limitations or general laws.
 

 There are two strong dissenting opinions in that, case.
 

 We have concluded' to re-examine this question.
 

 The Constitution must be read and construed in its-entirety so as to harmonize and give force and effect to all its provisions.
 

 Article I of the Constitution, known as the Bill of Rights, contains twenty sections defining rights of the people, collectively and individually, and guaranteeing the enjoyment of such rights.
 

 Section 1, Article I provides as follows:
 

 “All men are, by nature, free and independent, and! have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring,, possessing, and protecting property, and seeking and! obtaining happiness and safety.”
 

 The rights guaranteed by Article I of the Constitution are not unrestricted rights but are subject to limitation or abrogation to such extent as may be necessary to promote the health, safety, morals or general welfare of society as a whole.
 

 Regulations which limit or abrogate these guaranties are sustained by virtue of a power inherent in government, conimonly called the police power. The term police power, although generally understood and universally recognized, is somewhat hazy and ambiguous and not subject to precise or even accurate definition.
 

 In Ohio the grant of police power to a municipality is found in Section 3, Article XVIII of the Constitution, which reads as follows:
 

 “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and
 
 *539
 
 other similar regulations, as are not in conflict with general laws.”
 

 Prior to 1912 municipal police power was derived through legislative action; since that time police power is derived /from the people through the Constitution.
 

 Regulations passed by virtue of the police power generally are limitations upon or abrogations of constitutionally gauranteed rights and such regulations, to be valid and enforceable, must conform to certain well defined and well understood standards.
 

 From a consideration of many cases upon the subject of police power the standards to determine the validity of this class of legislation may be stated thus:
 

 Laws or ordinances passed by virtue of the police power which limit or abrogate constitutionally guaranteed rights must not be arbitrary, discriminatory, capricious or unreasonable and must bear a real and substantial relation to the object sought to be obtained, namely, the health, safety, morals or general welfare of the public.
 

 The courts of this country have been extremely zealous in preventing the constitutional rights of citizens being flittered away by regulations passed by virtue of the police power.
 

 If an enactment is referable to the police power, to be valid, the court must be able to say that it tends in some substantial degree to the prevention of offenses, or the preservation of tlje health, morals, safety or general welfare of the public. Therefore, if it is apparent that there is no plausible, reasonable and substantial connection between the provisions of the act and the supposed evils to be suppressed, there exists no authority for its enactment. Legislative bodies may not, under the guise of protecting the public interest, interfere with private business by imposing arbitrary, discriminatory, capricious or unreasonable restrictions upon lawful business.
 

 
 *540
 
 We realize that the police power is elastic to meet changing conditions and changing needs, yet it cannot be used to abrogate or limit personal liberty or property rights contrary to constitutional sanction.
 

 Before proceeding to an examination of the ordinance in question it should be observed that the business of barbering is a lawful business, and'that the right to carry on such business is a property right constitutionally protected against unwarranted and arbitrary interference by legislative bodies.
 

 We are here dealing with a penal ordinance having for its stated purpose the definition and punishment of a misdemeanor. The ordinance makes it unlawful for the owner or his agent or employee to permit a barber shop to be open for the business of barbeiing other than upon the days of the week and the hours of the day set forth therein and provides a penalty for its violation.
 

 Bespecting, as we do, the legislative authority of the city council and its right to determine what ordinances shall be passed, yet when an act of such body is challenged we must determine whether the act conforms to rules of fundamental law designed to curb and check the unwarranted exercise of unreasonable and arbitrary power. With these principles in mind let us consider whether this ordinance bears a real and substantial relation to the health, safety, morals or general welfare of the public.
 

 It would be a bold man indeed who would seriously assert that the hours of the day during which a barber shop could remain open for business have any real and substantial relation to the safety, morals or general welfare of the public.
 

 Whether the patrons of a barber shop get a hair cut, shave, shine, or any other service rendered in a barber shop between the hours of 8:00 o’clock a. m. and 8:00 o ’clock p. m. or at some other time of the day or
 
 *541
 
 night, in our opinion, can have no possible relation to the safety, morals or general welfare of the public.
 

 The operation of barber shops in relation to health is controlled by state law, Sections 1081-1 to 1081-27, General Code. This ordinance cannot be considered a sanitary measure.
 

 In determining the question of the validity of ordinances of this character we are not entering a new or unexplored field of legislation. The-question here presented has been submitted to numerous courts of last resort in many states of the Union, and in twelve states kindred laws or ordinances have been declared unconstitutional and void.
 

 See
 
 Chaires
 
 v.
 
 City of Atlanta,
 
 164 Ga., 755, 139 S. E., 559, 55 A. L. R., 230;
 
 State, ex rel. Newman,
 
 v.
 
 City of Laramie,
 
 40 Wyo., 74, 275 P., 106;
 
 Ganley
 
 v.
 
 Claeys,
 
 2 Cal. (2d), 266, 40 P. (2d), 817;
 
 Patton
 
 v.
 
 City of
 
 Bellingham, 179 Wash., 566, 38 P. (2d), 364, 98 A. L. R., 1076;
 
 State, ex rel. Pavlik,
 
 v.
 
 Johannes,
 
 194 Minn., 10, 259 N. W., 537;
 
 State
 
 v.
 
 Greeson,
 
 174 Tenn., 178, 124 S. W. (2d), 253;
 
 Eanes
 
 v.
 
 City of Detroit,
 
 279 Mich., 531, 272 N. W., 896;
 
 Opinion of Justices,
 
 300 Mass., 615, 14 N. E. (2d), 953;
 
 Amitrano
 
 v.
 
 Barbaro,
 
 61 R. I., 424, 1 A. (2d), 109;
 
 Oklahoma City
 
 v.
 
 Johnson,
 
 183 Okla., 430, 82 P. (2d), 1057;
 
 City of Huron
 
 v.
 
 Munson,
 
 67 S. D., 88, 289 N. W., 416; and
 
 City of Louisville
 
 v.
 
 Kuhn,
 
 284 Ky., 684, 145 S. W.
 
 (2d),
 
 851.
 

 In three or four cases courts have taken the contrary view.
 

 In less than a year after the decision in
 
 Wilson
 
 v.
 
 City of Zanesville, supra,
 
 this court was called upon to decide the validity of an ordinance passed by the city of Toledo fixing the hours within which retail grocery stores could be open for business.
 
 Olds
 
 v.
 
 Klotz,
 
 131 Ohio St., 447, 3 N. E. (2d), 371.
 

 In that case the court was unanimous in holding the groceiw store ordinance unconstitutional and void.
 

 
 *542
 
 The writer 1f this opinion has carefully read both decisions several times and almost every statement made in sustaining the ordinance considered in the
 
 Zanesville case
 
 (barber shops) could be made with equal force and logic in sustaining the Toledo ordinance (grocery stores). On the other hand every statement of law made in declaring the Toledo ordinance (grocery stores) invalid would be equally applicable in declaring the Zanesville ordinance (barber shops) invalid. In my mind the distinction sought to be drawn in those two cases is more fanciful than real.
 

 It is true, as pointed out in the
 
 Zanesville case,
 
 that the services of a barber brings him in direct contact with the persons of his patrons and careless and unsanitary practices in his trade may induce disease. It is equally true that the services of the physician, dentists, chiropractor, masseur, hairdresser, beauty parlor operator, turkish bath operator and many others bring them in the same direct contact with their patrons, but can it be true that such fact justifies the passage of ordinances making it unlawful for such persons to engage in their professions during hours other than those fixed in such ordinances?
 

 Let us for a moment consider these two vocations, the barber’s and the grocer’s, upon the phase of personal contact.
 

 The barber’s hands come in contact with the persons of his patrons; the grocer’s hands come in contact with the food his patrons eat. Would an unsani4 tary condition of a barber or a barber shop be more likely to cause disease than an unsanitary condition of a grocer or a grocery store? Obviously the answer is no.
 

 The barber sells personal service, the grocer sells merchandise, and to hold that one selling personal service may be controlled as to business hours and that the one selling merchandise cannot be so controlled
 
 *543
 
 we think presents a distinction without a difference.
 

 This ordinance accomplishes no purpose other than to fix the hours of labor of those engaged in the barber trade.
 

 The power to pass laws fixing and regulating the hours of labor is granted by the Constitution to the General Assembly only, and municipalities are without authority to accomplish such purpose by ordinance.
 

 We are of opinion that this ordinance bears no real áñd substantial relation to the health, safety, morals or general walfare of the public, that it is not a valid exercise of the police power, that the ordinance is arbitrary, discriminatory and unreasonable and upon reason and authority must be condemned.
 

 The conclusion reached by the Court of Appeals in the instant case was fully justified by the holding in.
 
 Wilson
 
 v.
 
 City of Zanesville, supra.
 

 It is our conclusion that
 
 Wilson
 
 v.
 
 City of Zanesville, supra,
 
 should be and hereby is overruled-; that the judgment of the Court of Appeals should be and hereby is reversed and final judgment entered in favor of the defendant for the reason that ordinance Section 523-1 is unconstitutional, being in contravention of the provisions of the Ohio Constitution.
 

 Judgment reversed and final judgment for ap- ■
 
 '
 
 pellant.
 

 Matthias, Hart and Turnee, JJ., concur.
 

 Weygandt, C. J., Zimmerman and Williams, JJ., dissent.