THE PEOPLE OF THE STATE OF NEW YORK ex rel. JAMES PINELLO, Relator, against GEORGE LEADBITTER, Defendant.

Supreme Court, Special Term, Dutchess County, December 21, 1948.

*Henry I. Baker* for relator.

*Edward K. Haas* for defendant.

COYNE, J. The relator in this, a habeas corpus proceeding, was arrested charged with a violation of an ordinance of the City of Poughkeepsie entitled "An Ordinance Relating to Licensing of Barbers and Hairdressers." The information, among other things alleged "that the said James Pinello * * * kept open his barber shop at No. 236 Hooker Avenue, in the City of Poughkeepsie, New York, before 8:30 o'clock A.M.

on the 15th day of September, 1948, and carried on the barbering business at said time and place and was cutting the hair of a customer at about five minutes after eight o'clock A.M. on said day at said barber shop in violation of Chapter 48 of the Code of Ordinances of the City of Poughkeepsie, New York, as amended by Sub-division 10 of Section 9, thereof, the said James Pinello being a barber and actually carrying on his said business at said time and place unlawfully and in violation of said ordinance.''

Subdivision 10 of section 9 of chapter 48 of the Code of Ordinances of the City of Poughkeepsie, as amended on April 7, 1947 — under which the information was laid and the warrant of arrest issued — provides insofar as is pertinent: '' 10. * * * It shall be unlawful for any person, firm or corporation to open, or keep open, any Barber Shop, Hairdressing Establishment or place of business where barbering or hairdressing is practiced, or to do any barbering or hairdressing, whether for compensation or not, on any Sunday or on any of the following legal holidays, to wit: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Day and no Barber Shop or Hairdressing Establishment shall be open for business, whether for compensation or not, earlier than 8:30 A.M., nor shall any Barber Shop or Hairdressing Establishment close later than 6:30 P.M., throughout the year.''

Specifically, the defendant was charged with carrying on his trade of barbering before 8:30 o'clock in the morning, the time set for the opening of business in said ordinance. No other violation is charged. Accordingly, the proceeding relates solely to that portion of the ordinance which attempts to regulate the hours within which the barbering trade may be conducted in the city of Poughkeepsie, and presents for determination the question of the constitutionality of that portion of the ordinance.

Relator contends that the regulation is violative of both the Federal and State constitutional prohibitions against depriving a person of liberty and property without due process of law. Defendant, on the other hand, contends that the regulation is constitutional, and is a proper exercise of the police power inherent in the common council of the City of Poughkeepsie.

The proceeding is a test case. It was arranged by the interested parties for the purpose of having this court pass upon the issue. Habeas corpus may be resorted to in advance of trial and judgment to resolve the question. (32 A. L. R. 1054;

10 Carmody on New York Pleading and Practice, § 13, and cases cited.)

A prior determination of the precise question has been had in another criminal action (*People* v. *Martell,* Aug., 1948) in the City Court of Poughkeepsie. In that action, City Judge CHARLES J. CORBALLY, after a trial, pronounced the regulation here involved to be unconstitutional and discharged the defendant. Shortly thereafter, the present proceeding was instituted.

Upon the hearing in the instant proceeding, certain documentary proof was received and witnesses testified for each side. By stipulation, the testimony of other persons, who had testified in the *Martell* case (*supra*) before City Judge CORBALLY, was made part of this record. Such evidence was received with the same force and effect as though the witnesses had appeared in person and testified. On behalf of the relator, evidence was adduced from citizens to establish that the regulation was arbitrary and unreasonable, and in no manner contributed to the public welfare. This evidence was directed towards establishing that professional men, traveling and business men, and tourists required barbering service at times beyond the restricted hours. There was also proof that the restraint resulted in a financial loss, and was detrimental to the business investments of certain of the barbers in the vicinity. The effect of this proof, briefly referred to, was more than adequate to rebut the presumption of the constitutionality of the regulation.

Local ordinances or regulations enacted by virtue of the police power generally are limitations upon or abrogations of constitutionally guaranteed rights and such regulations to be valid and enforcible must conform to certain well-defined standards. The general standard which evolves from a consideration of many cases on the subject of police power is that a law or ordinance which limits constitutionally guaranteed rights must not be arbitrary, discriminatory, capricious or unreasonable and must bear a real and substantial relation to the object sought to be obtained, namely the health, safety, morals or general welfare of the public. The constitutional rights of a citizen may never be curtailed by an unreasonable regulation passed by virtue of police power. A legislative body may not, under the guise of protecting the public interest, interfere with private rights by imposing arbitrary or unreasonable restrictions upon a lawful business. (*City of Cincinnati* v. *Correll,* 141 Ohio St. 535.) The Federal and State Constitutions do not prohibit governmental regulation for the public welfare. They

merely condition the exertion of the admitted power, by securing that the end shall be accomplished by methods consistent with due process. The guarantee of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. (*Nebbia* v. *New York*, 291 U. S. 502.) The reasonableness of each regulation depends upon the relevant facts. The law must be reasonable in its application, and must be passed to prevent some manifest evil. (*Fisher Co.* v. *Woods*, 187 N. Y. 90.) If the law violates these accepted principles, it constitutes an invasion of the constitutional rights of the individual.

Regulations of hours during which specified trades or businesses may be conducted have been declared constitutional: laundries — *Barbier* v. *Connolly* (113 U. S. 27) and *Soon Hing* v. *Crowley* (113 U. S. 703); pawnshops, secondhand stores and junk shops — *Hyman* v. *Boldrick* (153 Ky. 77) and *City of Butte* v. *Paltrovich* (30 Mont. 18); jewelry auctions — *Biddles, Inc.,* v. *Enright* (239 N. Y. 354) and *Clein* v. *City of Atlanta* (164 Ga. 529); soft-drink parlors — *Churchill* v. *City of Albany* (65 Ore. 442); pool and billiard halls — *City of Tarkio* v. *Cook* (120 Mo. 1); and closing barbershops on Sunday — *People* v. *Havnor* (149 N. Y. 195) and *Stanfeal* v. *State* (78 Ohio St. 24).

The occupation of barbering is a well-recognized trade, and is regarded as more or less indispensable in our present-day way of life. Clearly, the relationship of the barber to the public is such as to render him amenable to legislative regulation to the end that those who patronize him may be protected from communicable diseases, unhealthful practices and unsanitary conditions, so far as practicable. In this connection, it is to be pointed out that the State of New York has taken cognizance of the necessity for such regulations by the enactment of a new law governing the practice of barbering. (General Business Law, art. 28, § 430 *et seq.,* eff. July 1, 1946.) In approving chapter 801 of the Laws of 1946, relating to the practice of barbering, the Governor of this State commented " In their present form these bills [also referring to a bill affecting cosmetology], in substantial particulars, are acceptable. They are stripped down to the elements of regulation that are designed to protect the consuming public from incompetence at the hands of unqualified persons. Features of older legislation which would have imposed unjustified restraints upon the right to

engage in these trades have been removed. Other features which would have been restrictive of competition in these trades have likewise been removed.''

This new law in no wise restricts or limits the hours within which barbering may be practiced. Nor do the provisions of the Sanitary Code of the State of New York established by the Public Health Council purport to regulate the hours within which barbering may be engaged in. The failure of the Legislature to include in the new statute a provision regulating the hours of operation in the barbering trade is most significant and consonant with the trend to remove any feature restrictive of competition.

While there appears to be a dearth of precedent in the State of New York on the precise issue presented, the question of the validity of an ordinance of the character under consideration does not fall in an unexplored field. The constitutionality of similar ordinances regulating hours of operation for barbering has been passed upon by numerous courts of last resort elsewhere in this country. In the overwhelming majority of these courts the ordinances have been declared unconstitutional. (*Chaires* v. *City of Atlanta*, 164 Ga. 755; *State ex rel. Newman* v. *City of Laramie*, 40 Wyo. 74; *Ganley* v. *Claeys*, 2 Cal. 2d 266; *Patton* v. *City of Bellingham*, 179 Wash. 566; *State ex rel. Pavlik* v. *Johannes*, 194 Minn. 10; *State* v. *Greeson*, 174 Tenn. 178; *Eanes* v. *City of Detroit*, 279 Mich. 531; *Opinion of Justices*, 300 Mass. 615; *City of Cincinnati* v. *Correll*, 141 Ohio St. 535, *supra*; *Amitrano* v. *Barbaro*, 61 R. I. 424; *Oklahoma City* v. *Johnson*, 183 Okla. 430; *City of Huron* v. *Munson*, 67 S. D. 88; *City of Louisville* v. *Kuhn*, 284 Ky. 684.) In several other out-of-State cases, constituting a very small minority, courts have sustained the constitutionality of such ordinances.

Diligent research has revealed only one factually similar case in this State, namely, *Guarino* v. *City of Niagara Falls* (184 Misc. 57). In the *Guarino* case (*supra*), the decision was rendered on a motion addressed to the sufficiency of the complaint. No evidence was taken and it does not appear what was relied upon to rebut the presumption of constitutionality. However, as will hereafter appear, insofar as that determination is founded upon a claim that adequate inspections cannot be had, except with the aid of the prescribed opening and closing hours, the decision is not followed.

In the present proceeding, the particular portion of the ordinance under attack, namely, subdivision 10 of section 9, is purely

an hour-fixing regulation. It is penal in its nature and imposes a restriction not upon the number of hours a day one may be employed in barbering, but prescribes the precise hours during which such trade may be conducted; and makes it unlawful to operate a barbershop in the city at any time other than during the particular periods designated.

Any contention that the regulation is a health measure designed to prevent those engaged in barbering from working long hours thereby impairing their efficiency and competence is fanciful indeed. To reason that hours of opening and closing of barbershops have a reasonable relation to the public health and safety is to overlook the practical aspect of the problem. It would seem that the public will be just as healthy and safe whether a shop opens or closes at the hours specified in the regulation, or at some other reasonable time convenient to the trade. Allowing that hours of work have a reasonable relation to the public health or safety, they can only be effectual as health or safety measures if limited to the number of hours per day or week that the individual barber is permitted to work.

Nor can there be any real merit to the contention that the regulation should be upheld upon the theory that it facilitates adequate inspection of the barbershops, thus inuring to the public health. Certainly, opportunity exists without absolute closing of barbershops for reasonable inspection. It does not, and can hardly be made to appear that any inspection must be continuous, covering every hour a barbershop is open. Any regulation compelling the opening or closing of barbershops between certain hours because it will be inconvenient for the authorities to inspect them — when they are open at other hours amply sufficient for such inspection — is an unnecessary and unreasonable interference with the operation of a lawful trade.

Seemingly, the regulation under consideration was not designed as a health measure to protect the public or proprietors or employees engaged in the barbering trade, or to facilitate sanitary inspections, but rather to protect certain members of the trade from lawful competition. The regulation in no sense tends to promote or preserve public health, morals, comfort or welfare. It is but an arbitrary and unwarranted interference with a merchant's business. One, or a number of barbers may desire to open or close their shops at a particular time. They may do so. However, they cannot, by legislation, compel every other proprietor to open or close at the same hour. If, to serve their own purposes those engaged in barbering in the city of Poughkeepsie

wish to effect what is sought to be effected by this regulation, they will have to accomplish it by friendly arrangement with the membership of those engaged in the trade, not by resort to compulsory legislation.

In summary, an examination of the authorities discloses that the overwhelming majority of the cases which have considered the validity of statutes or ordinances containing provisions fixing hours within which barbershops may be opened for business have reached the conclusion, upon various grounds, that such provisions are an unconstitutional invasion of the right to earn a living, and consequently a denial of due process, having no reasonable relation to the admittedly proper exercise of the police power in regulating such trade. Under the law, and on the evidence adduced, I find that the provision in question is arbitrary and unreasonable. In the opinion of this court, that portion of the ordinance which forms the basis of the charge against the relator is unconstitutional and invalid.

The writ of habeas corpus is sustained and the relator ordered released from custody.