Dewey K. RANDALL, Appellant
(Defendant Below)

v.

TOWN OF HIGHLAND, Appellee
(Plaintiff Below).

No. 3–480A108.

Court of Appeals of Indiana,
Third District.

Feb. 25, 1981.

Rehearing Denied May 6, 1981.

Michael L. Muenich, Hand, Muenich & Wilk, Hammond, for appellant.

Charles L. Zandstra and Daniel G. Hoebeke, Zandstra, Zandstra & Muha, Highland, for appellee.

HOFFMAN, Presiding Judge.

Dewey K. Randall appeals a court ordered six-month suspension of his driver's license. The issues raised are:

(1) whether a trial court may impose a punishment not provided for in the applicable municipal ordinance;

(2) whether the suspension provisions of IC 1971, 9–2–1–9(a) (Burns Code Ed.) apply to violations of municipal ordinances; and

(3) Do municipal ordinances, if classified as laws under IC 1971, 9–2–1–9(a), violate the Constitution of the State of Indiana, art. 4, §§ 22 and 23?

Randall was arrested on December 6, 1979 in Highland, Indiana for a violation of a town ordinance. In particular, Randall was charged with travelling 48 mph in a 30 mph zone. Randall pleaded guilty to the charge and was fined $51 plus court costs of $19. The trial court also suspended Randall's driver's license for six months. This order was later modified and the court instructed the Bureau of Motor Vehicles to reissue Randall's license pending this appeal.

Randall initially contends that the trial court is without jurisdiction and exceeded its constitutional authority in suspending the license. According to Randall, since penalties for violation of municipal ordinances are recovered in civil, not criminal, actions a trial court is restricted from imposing penalties in excess of those provided for in the ordinance. In the present case,

the maximum penalty provided for in the ordinance is a fine of $100.

IC 1971, 18–1–1.5–19 (1980 Burns Supp.) (repealed effective September 1, 1981)[1] empowers a city or town, in some instances, to provide a punishment for offenses if that punishment does not provide for imprisonment or for a fine in excess of $1,000. Clearly, if the trial court had sentenced Randall to prison, or had fined him an amount greater than $1,000 for a violation of a town ordinance for which the Town had established a penalty, the trial court would have exceeded its authority. It is also clear that if the court had fined Randall an amount greater than the maximum provided for in the ordinance, that fine would have been improper. A suspension of a driver's license however differs from the imposition of a fine in excess of the amount provided for in an ordinance. Suspension is provided for in a statute separate from any other penalty provisions. IC 1971, 9–2–1–9 (Burns 1980 Repl.)[2] specifically gives the court authority to recommend suspension of a license. This authority is above and beyond the court's authority to impose other penalties. As such, suspension is a penalty which any court may impose on a person convicted "for a violation of any law relating to motor vehicles." The trial court did not err in suspending Randall's license in addition to imposing a fine.

Randall next contends that his conviction for a violation of a municipal ordinance does not constitute a conviction "for a violation of any *law* relating to motor vehicles." Specifically Randall argues that the 1978 amendment to IC 1971, 9–2–1–9 removed a violation of a city ordinance from the purview of the statute.

Prior to the 1978 amendment, IC 1971, 9–2–1–9 provided in pertinent part:

"(a) Every court having the jurisdiction of offenses under this act or other acts concerning the operation of motor vehicles, including any offense committed under *any act of this state regulating the operation of motor vehicles on public*

1. IC 1971, 18–1–1.5–19 provides:
   "A city [or town] may not exercise the following powers:
   (1) The power to enact laws governing private or civil relationships, except as an incident to the exercise of an independent municipal power.
   (2) The power to define and provide for the punishment of offenses, except that a city may define and provide punishment for the violation of ordinances if:
   (A) The conduct for which punishment is provided does not also constitute a violation of a statute; and
   (B) The ordinance does not provide for imprisonment, or for a fine in excess of one thousand dollars [$1,000].
   (3) The power to require a franchise, certificate, or permit to operate any common or contract carriers of passengers or property, operating under the jurisdiction of the public service commission of Indiana."

2. IC 1971, 9–2–1–9 provides:
   "(a) A court shall forward to the commissioner a certified abstract of the record of the conviction of any person in the court for a violation of any law relating to motor vehicles, and if in the opinion of the court the defendant should be deprived of his privilege to operate a motor vehicle upon the public highways, the court shall recommend the suspension of the current driving license of the person so convicted for a fixed period not

exceeding one [1] year, which the court in its discretion may deem best, and the commissioner shall thereupon comply with such recommendation.
(b) At the time of any conviction referred to in section 5(b) [9–2–1–5(b)] of this chapter or subsection (a) of this section, the court may obtain the defendant's current driving license and return it to the department.
(c) [Deleted by 1978 amendment.]
(d) [Deleted by 1978 amendment.]
(e) The abstract provided for by this section shall be in such form as the commissioner shall prescribe and, when certified, shall be accepted by any administrative agency or court as prima facie evidence of the conviction and all other action therein stated.
(f) The clerk of a court, or the judge of a court which has no clerk, shall forward to the commissioner a certified abstract of the record of any judgment for damages, the rendering and nonpayment of which judgment requires the commissioner to suspend or revoke the current driving license and the registrations in the name of the judgment debtor hereunder; such record to be forwarded to the commissioner immediately upon the expiration of thirty [30] days after such judgment has become final and has not been stayed or satisfied, as shown by the records of the court."

*highways,* and including any offense either a misdemeanor or a felony, with regard to the operation, regulation, or licensing of motor vehicles or of operators, *or of any city ordinance relating to moving traffic violation,* shall forward or cause to be forwarded to the department as hereinafter provided . . . , and, if in the opinion of the court, the defendant should be deprived of his privilege to operate a motor vehicle upon the public highways, the court shall recommend the suspension of current driving license of the person so convicted of any determinate period not exceeding one (1) year, . . . ." (Emphasis added.)

The statute as amended provides:

"(a) A court shall forward to the commissioner a certified abstract of the record of the conviction of any person in the court for a *violation of any law relating to motor vehicles,* and if in the opinion of the court the defendant should be deprived of his privilege to operate a motor vehicle upon the public highways, the court shall recommend the suspension of the current driving license of the person so convicted for a fixed period not exceeding one [1] year, which the court in its discretion may deem best, and the commissioner shall thereupon comply with such recommendation." (Emphasis added.)

The issue before the court therefore is whether the term "law" excludes city ordinances or is actually a combination of both "act" and "ordinance."

In regard to legislation, "act" is defined as

"[a] written law, formally ordained or passed by the legislative power of a state. . . . 'Act' does not include ordinances or regulations made by local authorities, or even statutes having only a local application." (Citations omitted.) Black's Law Dictionary 42–43 (4th ed. 1951).

"Ordinance" is defined as

"[a] rule established by authority; a permanent rule of action; a law or stat-

ute. In a more limited sense, the term is used to designate the enactments of the legislative body of a municipal corporation. *State v. Swindell,* 146 Ind. 527, 45 N.E. 700, 58 Am.St.Rep. 375; *Bills v. Goshen,* 117 Ind. 221, 20 N.E. 115, 3 L.R.A. 261."

Black's Law Dictionary 1248 (4th ed. 1951).

Finally, "law" is defined as

"[t]hat which is laid down, ordained, or established. A rule or method according to which phenomena or actions co-exist or follow each other. That which must be obeyed and followed by citizens, subject to sanctions or legal consequences, is a 'law.' " (Citation omitted.)

Black's Law Dictionary 1028 (4th ed. 1951).

Among the very numerous examples listed of what may be considered law are municipal ordinances. Black's Law Dictionary at 1028 citing *Norfolk & W. Ry. Co. v. White,* Va., 160 S.E. 218, 221; *State v. Police Court of City of Deer Lodge,* 86 Mont. 297, 283 P. 430, 433; (*contra, Village of Brewster v. Hills,* 128 Ohio St. 354, 191 N.E. 366; *City of Cincinnati v. Correll,* 141 Ohio St. 535, 49 N.E.2d 412, 413).

■ It is apparent from the above definitions that a violation of a city ordinance would not be included under the phrase "any act of this state." A separate provision was therefore necessary to include such violations. Under the amended statute however, the phrase "any law relating to motor vehicles" is broad enough to include both state acts and city ordinances. It is worth noting that had the Legislature intended to exclude city ordinances from the statute, it could have used the phrase "any law of this state."

Finally, Randall argues that the characterization of municipal ordinances as laws, makes them local laws and therefore in violation of the Constitution of the State of Indiana, art. 4, §§ 22 and 23.[3] Randall cites

---

**3.** Article 4, § 22 provides:

"The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say:

*Massey v. City of Mishawaka* (1978), Ind. App., 378 N.E.2d 14 and *State, etc. v. Town of Roseland* (1978), Ind.App., 383 N.E.2d 1076 to support his proposition.

■ Contrary to Randall's argument, these cases do not hold that there must be a distinction drawn between "ordinance" and "law" to avoid conflict with the Constitution. The court instead draws a distinction between laws passed by the General Assembly and those passed by municipal corporations. The scope of art. 4, §§ 22 and 23 was defined in *Massey* as follows:

"Article 4, §§ 22 and 23 prohibits the General Assembly from enacting local laws for the punishment of crimes and misdemeanors and mandates that laws of the General Assembly defining crimes and misdemeanors shall be general and of uniform operation throughout the state. *City of Indianapolis v. Sablica* (1976), 264 Ind. 271, 342 N.E.2d 853; *Setser v. City of Fort Wayne* (1976), Ind.App., 346 N.E.2d 642. *It is clear that the mandate of § 23 is directed to the laws of the General Assembly not to the ordinances of municipalities.*" (Emphasis added.)

378 N.E.2d at 19.

This distinction was again drawn in *Roseland*:

[1.] Regulating the jurisdiction and duties of Justices of the Peace and of Constables;
[2.] For the punishment of crimes and misdemeanors;
[3.] Regulating the practice in courts of justice;
[4.] Providing for changing the venue in civil and criminal cases;
[5.] Granting divorces;
[6.] Changing the names of persons;
[7.] For laying out, opening and working on highways, and for election or appointment of supervisors;
[8.] Vacating roads, town plats, streets, alleys and public squares;
[9.] Summoning and impaneling grand and petit juries, and providing for their compensation;
[10.] Regulating county and township business;
[11.] Regulating the election of county and township officers and their compensation;
[12.] For the assessment and collection of taxes for State, county, township, or road purposes;

"When read together, the *provisions merely state that the General Assembly, when passing laws which punish crimes and misdemeanors, may not pass laws that are local in application*; but all laws must be general and capable of uniform application. In the present case, the State acted in accordance with these provisions when it passed general maximum speed limits for urban areas, highways, and 'other locations.' However, the State recognized that it could not anticipate local traffic situations which would require different speed limits. And, under the Constitution, the State had no power to pass local or special laws setting speed limits in individual locations. The choice the State faced was as follows:

(1) it could have passed a more comprehensive general speeding statute to apply to a greater variety of situations, with the recognition that a rigid system of speed limits would result;

(2) it could pass certain maximum speed limits and empower each local authority to pass ordinances which established speed limits, taking into account particular local problems and conditions.

"The State chose the latter course of action." (Footnotes omitted.) (Emphasis added.)

[13.] Providing for supporting common schools, and for the preservation of school funds;
[14.] In relation to fees or salaries: except that the laws may be so made as to grade the compensation of officers in proportion to the population and the necessary services required;
[15.] In relation to interest on money;
[16.] Providing for opening and conducting elections of State, county, or township officers, and designating the places of voting;
[17.] Providing for the same of real estate belonging to minors or other persons laboring under legal disabilities, by executors, administrators, guardians, or trustees [As amended March 14, 1881]."

Article 4, § 23 provides:

"In all the cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

383 N.E.2d at 1079–1080.

It is clear from these interpretations that ordinances limiting speed are constitutional not because they are not considered laws, but rather because they are passed by local legislative bodies and not the General Assembly. Randall's argument must therefore fail.

 It should also be noted that IC 1971, 18–1–1.5–2 (1980 Burns Supp.)[4] which formerly provided for misdemeanor treatment was amended in 1978 to remove the misdemeanor penalties. Therefore, local speed ordinances do not constitute laws for punishment of crimes and misdemeanors. Randall's argument must also fail for this reason.

For the above reasons the judgment of the trial court is affirmed.

Affirmed.

GARRARD and STATON, JJ., concur.

---

4. IC 1971, 18–1–1.5–2 provides:

"A city [or town] may establish and operate a government for the purpose of carrying out its powers and functions. The power to establish and operate a government includes the power to do the following:

(1) Sue and be sued.

(2) Have a corporate seal.

(3) Acquire and own interests in real and personal property.

(4) Use, protect, maintain and dispose of interest in real or personal property owned by the city [or town].

(5) Enter into contracts.

(6) Pay debts and expenses.

(7) Borrow money in accordance with applicable law and subject to the limitations of the constitution.

(8) Accept donations of money, property, services or other advantages.

(9) Enact ordinances and establish penalties for their violation, subject to the limitations of section 19 [18–1–1.5–19] of this chapter.

(10) Require the attendance of witnesses and the production of documents germane to matters being considered at meetings of the common council, or of any board, department or agency empowers by law or ordinance to hear and determine any matter.

(11) Punish contempt and disorder in rooms of the common council or of any board, department or agency of the city [or town].

(12) Hire and discharge employees, except where the hiring or discharge is prescribed by the general assembly.

(13) Provide a system of pensions and retirements, except where such a system is prescribed by the general assembly, for officers and employees, which pension and retirement boards may accept gifts and bequests.

(14) Establish a system of employment with respect to any class of employees under which such employees would have security of employment and would be hired, promoted, demoted, transferred, discharged, compensated, and accorded other benefits and advantages on the basis of merit and qualification.

(15) Enter into contracts and execute documents necessary to receive money, property, services, or other advantages from the state government, federal government, or from any other source.

(16) Ratify any action of the city [or town] or its officers and employees if that action could have been approved in advance of the action."