THE STATE OF OHIO, APPELLEE, *v.* SCHMIDT ET AL., APPELLANTS.

[Cite as State *v.* Schmidt (1987), 29 Ohio St. 3d 32.]

(No. 86-263—Decided March 25, 1987.)

*David Tobin,* prosecuting attorney, and *Melissa Byers,* for appellee.
*Michael P. Farris* and *Stephen P. Leiby,* for appellants.

HERBERT R. BROWN, J. The central issue raised is whether the requirement under R.C. 3321.04(A)(2),[1] that parents must seek the approval of the school board superintendent for their home education program in order to obtain an excuse from the compulsory education laws, infringes upon the religious freedom of appellants.[2]

Appellants acknowledge, as they must, that the state has a compelling interest in the education of its citizens.[3] Nevertheless, appellants argue that R.C. 3321.04(A)(2) violates the First Amendment to the United States Constitution.[4] Appellants claim an impermissible infringement of

---

[1] R.C. 3321.04 provides, in pertinent part:

"Every parent of any child of compulsory school age who is not employed under an age and schooling certificate must send such child to a school or a special education program that conforms to the minimum standards prescribed by the state board of education, for the full time the school or program attended is in session, which shall not be for less than thirty-two weeks per school year. * * *

"* * *

"Excuses from future attendance at or past absence from school or a special education program may be granted for the causes, by the authorities, and under the following conditions:

"(A) The superintendent of schools of the city, exempted village, or county school district in which the child resides may excuse him from attendance for any part of the remainder of the current school year upon satisfactory showing of either of the following facts:

"* * *

"(2) That he is being instructed at home by a person qualified to teach the branches in which instruction is required, and such additional branches, as the advancement and needs of the child may, in the opinion of such superintendent, require. In each such case the issuing superintendent shall file in his office, with a copy of the excuse, papers showing how the inability of the child to attend school or a special education program or the qualifications of the person instructing the child at home were determined. All such excuses shall become void and subject to recall upon the removal of the disability of the child or the cessation of proper home instruction; and thereupon the child or his parents may be proceeded against after due notice whether such excuse be recalled or not."

[2] Appellants' claims based on R.C. 3321.04(C) are misplaced, as that section is inapplicable to permanent or long-term absences from a school. See 1974 Ohio Atty. Gen. Ops. No. 74-066; and 1979 Ohio Atty. Gen. Ops. No. 79-056.

[3] See *Wisconsin* v. *Yoder* (1972), 406 U.S. 205, 213-214, wherein the court declared:

"There is no doubt as to the power of a State, having a high responsibility for education of its citizens, to impose reasonable regulations for the control and duration of basic education. * * * [Nevertheless,] a State's interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment * * *."

[4] The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *."

their religious beliefs because the approval requirement is not the "least restrictive means" that Ohio could have employed to achieve its interests.

In *State* v. *Whisner* (1976), 47 Ohio St. 2d 181, 1 O.O. 3d 105, 351 N.E. 2d 750, this court applied a three-prong test to determine whether the "minimum standards" promulgated by the State Board of Education impermissibly infringed upon the right of parents of children attending a non-public school to the free exercise of religion. (See, also, *State, ex rel. Nagle,* v. *Olin* [1980], 64 Ohio St. 2d 341, 18 O.O. 3d 503, 415 N.E. 2d 279.)

As applied to the facts of the instant case, that test can be summarized as follows:

(1) Are the religious beliefs truly held?[5]

(2) Has it been shown that the approval requirement of R.C. 3321.04(A)(2) infringes upon appellants' constitutional right to the free exercise of religion?

(3) If both (1) and (2) have been satisfied by appellants, has the state demonstrated that its compelling interest in the education of its citizens cannot reasonably be achieved by means that would impose a lesser infringement upon appellants' right to the free exercise of religion?

If appellants satisfy the first two prongs of this test, and if the state fails to satisfy the third prong, then appellants must prevail. *Whisner, supra.*

We find no indication in the record that appellants' claimed religious beliefs are not sincere. Thus appellants meet this threshold test.

However, appellants fail to demonstrate that the approval requirement of R.C. 3321.04(A)(2) infringes upon their right to the free exercise of religion.

Unlike the compulsory attendance statutes of most states,[6] R.C. 3321.04 specifically provides a home education exception. It acknowledges the right of parents to educate their children at home, and guards against the abuse of that right by requiring parents to obtain the approval of the superintendent for their home education programs. Despite the invitation from Superintendent Stiller to discuss their plan for educating Sara at home, appellants failed to submit a proposal requesting his approval.

This court will not speculate as to what result the superintendent would have reached had appellants submitted a proposal. We will not presume that the superintendent's actions would have been unconstitu-

---

[5] As the court explained in *United States* v. *Seeger* (1965), 380 U.S. 163, 185:

"* * * [W]e hasten to emphasize that while the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.' This is the threshold question of sincerity which must be resolved in every case. It is, of course, a question of fact * * *."

[6] As of 1982, only fifteen states had statutes explicitly providing for home education. See Tobak & Zirkel, Home Instruction: An Analysis of the Statutes and Case Law (1982), 8 U. Dayton. L. Rev. 1, 5-12.

tional. *Yee Bow* v. *Cleveland* (1919), 99 Ohio St. 269, 273, 124 N.E. 132, 133, 12 A.L.R. 1424, 1427.[7]

The case *sub judice* does not fall within the reach of *Wisconsin* v. *Yoder* (1972), 406 U.S. 205, wherein the United States Supreme Court enunciated a standard consistent with our holdings in *Whisner* and *Olin, supra.* Here, as distinguished from *Yoder,*[8] appellants have made a unilateral decision to ignore the plain requirement that an application for their home education proposal be submitted.

Without an application by appellants and without a proposal to the superintendent, there is no way to balance appellants' right to the free exercise of their religion in respect to Sara's education against the state's interest, albeit by least restrictive means, in her education.[9] We therefore do not reach the third prong of the test in *Whisner.*

We hold that the requirement under R.C. 3321.04(A)(2), that parents must seek the approval of the superintendent for their home education program in order to obtain an excuse from the compulsory attendance laws, reasonably furthers the state's interest in the education of its citizens and does not infringe upon the free exercise of religion.[10]

Nor are we persuaded by appellants' contention that there is an improper delegation of authority in the requirement that superintendents throughout Ohio make the initial determination as to who is qualified to give home instruction. The statute gives the superintendent an intelligible principle for his guidance and the desirable flexibility to accommodate home education programs that parents such as appellants and

---

[7] Moreover, the rights of parents are protected by R.C. 3331.08, which provides for judicial review of a superintendent's decision not to grant a requested excuse from the compulsory attendance laws:

"In case a superintendent of schools refuses to excuse a child from attendance at school for one of the reasons stated in section 3321.04 of the Revised Code, or refuses upon request to grant an age and schooling certificate as provided in section 3331.01 of the Revised Code, an appeal may be taken from such decision to the juvenile judge of the county, upon the giving of bond, within ten days thereafter, to the approval of such judge, to pay the costs of appeal. His decision in the matter shall be final."

[8] In *Yoder,* an approval was requested but denied. *Id.* at 207-208, fn. 2, and at 208-209, fn. 3.

[9] The Supreme Judicial Court of Maine has held:

"'* * * For the state to allow home education without imposing some standards as to quality and duration would be, in many cases, to allow parents to deprive their children of any education whatsoever. Not all parents who would hold their children out of school under such an unlimited exception to the compulsory education statute would have the sincere desire, which is no doubt present in the instant case, to provide their children with adequate instruction. Furthermore, many parents, even though they have a sincere desire to educate their children at home, lack the necessary training and facilities to do so." *State* v. *McDonough* (Me. 1983), 468 A. 2d 977, at 980.

[10] See *State* v. *McDonough, supra; State* v. *Riddle* (1981), 168 W. Va. 429, 285 S.E. 2d 359.

those similarly situated may wish to pursue. An arbitrary and capricious refusal by the superintendent can be measured and corrected in the appeal procedure provided by R.C. 3331.08. See *Blue Cross* v. *Ratchford* (1980), 64 Ohio St. 2d 256, 259-260, 18 O.O. 3d 450, 452, 416 N.E. 2d 614, 617-618.[11]

Finally, the requirement, under R.C. 3321.04(A)(2), that the approval of the superintendent must be obtained before removing a child from a school to a home education program is not vague. Appellants knew that the law required them to request Superintendent Stiller's approval in order to educate Sara at home.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES and DOUGLAS, JJ., concur.

LOCHER and BROGAN, JJ., separately dissent.

BROGAN, J., of the Second Appellate District, sitting for WRIGHT, J.

LOCHER, J., dissenting. I believe that the determination to be made by the school superintendent as to who is "qualified to teach" pursuant to R.C. 3321.04(A)(2) is an improper delegation of authority contrary to the basic values underlying the principles of due process. Therefore, I respectfully dissent.

R.C. 3321.04(A)(2) provides in pertinent part:

"(A) The superintendent of schools of the city, exempted village, or county school district in which the child resides may excuse him from attendance for any part of the remainder of the current school year upon satisfactory showing of either of the following facts:

"* * *

"(2) That he is being instructed at home by a person *qualified to teach* the branches in which instruction is required * * *. In each such case the issuing superintendent shall file in his office, with a copy of the excuse, papers showing how * * * the qualifications of the person instructing the child at home were determined. * * *" (Emphasis added.)

This statute affords no guidance to superintendents limiting their discretion in determining who is "qualified to teach." The decision of the superintendent may rest on *ad hoc* and subjective standards. What must be the educational background of the teachers — must they be state-certified or does "qualified" allow less than that?

Today's decision forces the Schmidts to subject their sincerely held religious beliefs to the judgment of a school superintendent who is free to

---

[11] See, also, *State* v. *Riddle, supra.*

make the determination without guidance. I fail to see any language in the statute which provides the "intelligible principle" for decision-making espoused by the majority.

Even the majority recognizes that an arbitrary and capricious refusal can be made by a superintendent. However, it believes that such an unjust refusal can be simply corrected by an appeal to the juvenile court pursuant to R.C. 3331.08. What guidelines are provided for the juvenile court to review the qualifications of a "home school" teacher? This court has recognized that " 'the courtroom is simply not the best arena for the debate of issues of educational policy and the measurement of educational quality,' * * * as well as the 'obvious fact that courts are not school boards or legislatures * * *.' " *State, ex rel. Nagle,* v. *Olin* (1980), 64 Ohio St. 2d 341, 353, 18 O.O. 3d 503, 510-511, 415 N.E. 2d 279, 288.

This statute fails to provide a superintendent with any guidelines as to who is "qualified to teach" and, in effect, permits a school superintendent to determine who is violating the law. Thus, I find it to be an improper delegation of authority contrary to the basic values underlying the principles of due process. See *Grayned* v. *City of Rockford* (1972), 408 U.S. 104.[12] Accordingly, I respectfully dissent.

BROGAN, J., dissenting. I must respectfully dissent from the majority opinion. In *State, ex rel. Nagle,* v. *Olin* (1980), 64 Ohio St. 2d 341, 18 O.O. 3d 503, 415 N.E. 2d 279, this court noted:

"In balancing an individual's right to freely exercise religious beliefs against a state's legitimate interest in assuring that its citizens receive quality educations, a court performs a sensitive and delicate task. *Wisconsin* v. *Yoder, supra,* at page 235. Our decision today, as in *State* v. *Whisner,* demonstrates simply that until such time as the State Board of Education adopts minimum standards which go no further than necessary to assure the state's legitimate interests in the education of children in private elementary schools, the balance is weighted, *ab initio,* in favor of a First Amendment claim to religious freedom." *Id.* at 354-355, 18 O.O. 3d at 511, 415 N.E. 2d at 288.

R.C. 3321.04 provides in part that excuses from future attendance at or past absence from school or a special education program may be granted for cause by the superintendent of schools under the following condition:

"* * * (A)(2) That * * * [the child] is being instructed at home by a person *qualified* to teach the branches in which instruction is required, and such additional branches, as the advancement and needs of the child may, in the opinion of such superintendent, require. * * *" (Emphasis added.)

This statute gives the school superintendent the unbridled discre-

---

[12] See, also, *State* v. *Newstrom* (Minn. 1985), 371 N.W. 2d 525; *State* v. *Popanz* (1983), 112 Wis. 2d 166, 332 N.W. 2d 750; *Roemhild* v. *State* (1983), 251 Ga. 569, 308 S.E. 2d 154.

tion to determine if a home-schooling teacher is "qualified." In fact, the superintendent admitted upon cross-examination that the statute provides wide latitude to school superintendents and different superintendents interpret and apply the code section differently. He testified the statute could be interpreted six hundred fifteen different ways by each of the six hundred fifteen superintendents of schools in the state. He further testified that the code section is not clear, is ambiguous, and needs clarification by the court so that parents and superintendents of schools will know what conduct is permitted and what conduct is prohibited.

In *Roemhild* v. *State* (1983), 251 Ga. 569, 308 S.E. 2d 154, the Georgia Supreme Court held that the Georgia compulsory school attendance statute was not sufficiently definite to provide a person of ordinary intelligence, who desired to avoid its penalties by having his or her children attend private school, fair notice of what constituted a "private school" and, thus, was void for vagueness. The court also noted that the law failed to establish minimum guidelines as to what constituted a "private school," so as to impermissibly delegate to local enforcement officials, judges and juries the policy decision of what constituted a "private school" in determining whether individuals had complied with law and was, therefore, unconstitutionally vague. See, also, *State* v. *Popanz* (1983), 112 Wis. 2d 166, 332 N.W. 2d 750.

As generally stated, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender* v. *Lawson* (1983), 461 U.S. 352, 357.

R.C. 3321.04(A)(2) is unconstitutionally void for its vagueness in that the definition of a "person qualified to teach" does not afford a person of average intelligence what is required under the statute, and it violates the Due Process Clauses of the Ohio and United States Constitutions since it delegates unbridled discretion to a government official as to whether parents can exercise the fundamental constitutional right of teaching their child at home.

If a statute or regulation is void on its face because it is impermissibly vague, an individual may refuse to comply with the law's requirements and still raise the law's facial invalidity as a defense in a subsequent prosecution under it. *Staub* v. *Baxley* (1958), 355 U.S. 313; *Thornhill* v. *Alabama* (1940), 310 U.S. 88; *Lowell* v. *Griffin* (1938), 303 U.S. 444, 452-453.

I would reverse the judgment of the court of appeals and enter judgment for the appellants.