THE STATE OF OHIO *v.*
SWARTZENTRUBER.

(No. 11413—Decided
December 11, 1989.)

Wadsworth Municipal Court.

*Norman E. Brague,* for the state.
*Richard J. Marco, Sr.* and *Daniel J. Marco,* for defendant.

JAMES L. KIMBLER, J. This cause is before the court on a motion to dismiss. The defendant, Jacob Swartzentruber, claims tht R.C. 1531.02, as applied to him, is unconstitutional. That section makes it a crime to violate an administrative regulation adopted by the Division of Wildlife. Ohio Adm. Code 1501:31-15-02(U) requires that deer hunters wear "hunter orange" while deer hunting with guns. Violation of this rule is a violation of R.C. 1531.02. It is a fourth degree misdemeanor, punishable by up to thirty days in jail and a fine up to $250.

On November 29, 1988, the defendant was deer hunting with a gun on private property in Homer Township. He was on the land with the permission of the landowner. He was not wearing "hunter orange" garments. He is a practicing member of a group of Amish

known as "Swartzentruber Amish." They are a member of the Old Order Amish and are reputedly the most conservative of the Amish in Ohio. They believe that the Bible prohibits the wearing of bright colors. This belief is based on their interpretation of I Peter 3:3 and I Tim. 2:9.

The Bishops of the Swartzentruber Amish have adopted the "Ordnung" or church rules for their church. The Amish believe these rules to be authorized by the Bible. These rules prohibit the wearing of bright colors, but, approximately fifteen years ago, the Bishops ruled that Amish hunters could wear the color red while hunting. The qualification, however, was that the color red had to be an article of clothing that had other utilitarian purposes.

Although hunting is not a necessity to the Amish, they do hunt for enjoyment, for food, and to protect their crops. In this respect, it helps to perpetuate their lifestyle. Only deer hunting with guns requires the wearing of "hunter orange." Deer may be hunted by bow without the wearing of "hunter orange." Other animals may be hunted by any means without the wearing of "hunter orange."

There is no question that the defendant's refusal to wear "hunter orange" is based upon a sincerely held religious belief.

The defendant's motion raises three constitutional issues:

1. Does Ohio Adm. Code 1501:31-15-02(U) exceed the grant of rulemaking power conferred by the agency's enabling legislation?

2. Is Ohio Adm. Code 1501:31-15-02(U) an unconstitutional exercise of the state's police power?

3. Does Ohio Adm. Code 1501:31-15-02(U) violate the Free Exercise Clause of the First Amendment to the United States Constitution?

*State* v. *Switzer* (1970), 22 Ohio St. 2d 47, 51 O.O. 2d 69, 257 N.E. 2d 908, discusses whether a grant of authority to an administrative agency constitutes an unlawful delegation of power.

In that case, the court concluded that "the control over fish and game is a proper subject for delegation of legislative power." *Id.* at 51, 51 O.O. 2d at 72, 257 N.E. 2d at 911.

In *State, ex rel. Corrigan,* v. *Seminatore* (1981), 66 Ohio St. 2d 459, 20 O.O. 3d 388, 423 N.E. 2d 105, the court re-emphasized its holding in *Switzer* by stating that a public agency may have implied powers as well as expressed powers relating to its specific functions.

R.C. 1531.08 pertains to the power of the Chief of the Division of Wildlife. That section states that the chief may regulate the taking of wild animals in number, quantity, length, or *manner.*

In this case, the court finds that the requirement that a hunter wear "hunter orange" relates to the manner in which deer may be hunted, or taken, by gun. As such, Ohio Adm. Code 1501:31-15-02(U) does not exceed the rulemaking authority of the Chief of the Division of Wildlife.

The next issue is whether the regulation bears a real and substantial relation to the public health, safety, morals, or general welfare. *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535, 26 O.O. 116, 49 N.E. 2d 412.

In this case, the state justifies the need for the regulation as being the protection of hunters from being shot by other hunters while they are hunting.

It could be argued that there is no public component to Ohio Adm. Code 1501:31-15-02(U) because the general public is no more or less safe if a hunter wears or refuses to wear hunter orange. This court, however, does not agree with that analysis.

An analogy can be drawn to R.C.

4513.263, which requires operators of motor vehicles to wear seat belts. The Court of Appeals for Portage County found that statute to be a constitutional exercise of the police power. *State* v. *Batsch* (1988), 44 Ohio App. 3d 81, 541 N.E. 2d 475.

In that case, the court noted that there was a substantial relationship to the health and safety of the general public. That relationship existed because oftentimes injured automobile drivers or passengers have to be cared for by public agencies following automobile accidents. Such agencies include ambulance services; hospitals; doctors; and other medical support personnel.

In this case the same relationship exists. In addition, it is not altogether true that other members of the public besides the hunter who is wearing the hunter orange are not protected.

It takes little imagination to realize how a hunter would feel who accidentally shot another person while hunting. Such psychological harm is potentially every bit as serious as physical harm. By making hunters wear orange, the state protects against the public being harmed in such fashion.

Therefore, this court finds that Ohio Adm. Code 1501:31-15-02(U) does bear a real relationship to the public health and safety.

The last issue presented by the motion is the most difficult to resolve. Does Ohio Adm. Code 1501:31-15-02(U) interfere with the defendant's free exercise of his religion?

The First Amendment to the United States Constitution prohibits governmental establishment of religion and also prohibits the government from interfering with the free exercise of religion. Both clauses are made applicable to the states through the Fourteenth Amendment. *Cantwell* v. *Connecticut* (1940), 310 U.S. 296.

The United States Supreme Court has ruled that in deciding whether a state regulation violates the Free Exercise Clause, a court should consider three issues: (1) is the objection to the regulation based on a sincerely held religious belief; (2) does the government regulation burden the exercise of that religious belief; and (3) if so, is the burden justified by a compelling state interest, which cannot be served by a less intrusive alternative, *E.g., Thomas* v. *Review Board* (1981), 450 U.S. 707, 713-719.

In this case, there is no dispute from the state that the defendant's objection to wearing hunter orange is motivated by a sincerely held religious belief.

The next question, whether the regulation burdens the exercise of his religion, is much harder to answer. The defendant argues that it does because he cannot hunt deer and comply with both the regulation and his beliefs. In the defendant's view, any regulation which would require conduct that is against his religious beliefs is unconstitutional, even if the conduct required is only required if he engages in a voluntary act.

It is clear that a state government cannot condition the receipt of certain benefits or privileges upon conduct which violates a person's religious beliefs.

The first case to establish this principle was *Sherbert* v. *Verner* (1963), 374 U.S. 398. In that case Sherbert, a Seventh-day Adventist, was denied unemployment benefits by South Carolina because she would not work on Saturdays.

The South Carolina Supreme Court held that since the unemployment statute did not prevent her from exercising her religion, it did not violate the First Amendment. *Sherbert* v. *Verner* (1962), 240 S.C. 286, 303-304, 125 S.E. 2d 737, 746.

The United States Supreme Court rejected that argument. It noted that Sherbert was put in the position of

4

following her religion and forfeiting benefits on the one hand or accepting work and abandoning her religious beliefs on the other. It found that this amounted to pressure to forgo the practice of her religion. 374 U.S. at 404.

It held that the governmental imposition of such a choice put the same kind of burden on Sherbert as would a fine for Saturday worship, 374 U.S. at 404.

The court further held that the fact that unemployment benefits were a privilege and not a right was not controlling. Justice Brennan wrote at 374 U.S. at 404:

"* * * It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege."

Having found a burden on the exercise of Sherbert's religion, the court did not find any compelling state interest that would justify the infringement.

The same rationale was followed in *Thomas* v. *Review Board, supra,* at 716-718.

There the court held that a person may not be compelled to choose between the exercise of a First Amendment right and participation in an otherwise available public program. The court referred to such a choice as putting "substantial" pressure on Thomas.

In *Thomas, supra,* the court referred to participation in Indiana's unemployment program as an "important" benefit. 450 U.S. at 717. However, neither in *Thomas* nor in *Sherbert* is there any discussion of any criteria which a lower court is to use in deciding whether a benefit or privilege is important.

Relying on the principle established in the above cases, lower courts have held that a state cannot condition the obtaining of a driver's license upon conduct which is offensive to a person's religious beliefs, *Quaring* v. *Peterson* (C.A. 8, 1984), 728 F. 2d 1121; nor can a state condition the operation of an Amish buggy upon a road upon religiously proscribed conduct, *State* v. *Hershberger* (Minn. 1989), 444 N.W. 2d 282.

Are all governmental privileges or benefits to be considered "important"? Does the First Amendment require a lower court to find all governmental benefits and privileges to be equally "important"?

This court believes that the answer to the above questions is no. This court believes that it must first determine how "important" the privilege or benefit is before it can determine whether the denial of such privilege or benefit would "substantially pressure" the defendant into modifying his religious views.

In *Sherbert* and *Thomas* the defendants were faced with a loss of income if they refused to modify their religious beliefs in accordance with the state statutes. In *Quaring* the petitioner could not get a driver's license and she lived in a rural area in Nebraska. In *Hershberger* the Amish defendants would have been forced to stop using the roadways or violate their religious beliefs.

All of the above cases were situations where there clearly would be substantial pressure to modify one's religious beliefs to comply with the state statute or regulation. It is hard to imagine pressure more substantial than loss of income, or, in a society where transportation is essential to obtain goods and services, the ability to move about.

This court believes that when a benefit or privilege is to be considered important must be decided on a case by case basis. This court further believes that the test is objective, and not subjective.

An important benefit or privilege is one that is needed to function in society. Such benefits or privileges include income from governmental welfare programs; the privilege to use the streets and highways to move about; or a privilege that the exercise of which is essential to a person's religion.

In this case, nothing in the defendant's religion compels him to hunt deer. He is not required to hunt deer in order to follow the dictates of his church. Nor is it essential to the Amish way of life. Given the choice between hunting deer lawfully, or following his religion and not hunting deer, the defendant will choose not to hunt deer.

In Ohio, deer can be hunted for only two weeks a year, by gun, and only one deer can be taken in that period. Denying the defendant the privilege of hunting one deer by gun a year is not the same as denying a person unemployment benefits or a driver's license. This court does not find that the denial of such a privilege would put substantial pressure, or any pressure, on the defendant to modify his religious beliefs. Any burden on the practice of the Amish religion by this regulation is indirect and very incidental.

Essentially, the defendant is prohibited from engaging in what is a recreational activity without wearing hunter orange. The privilege to engage in a recreational activity is not an important governmental benefit as that term was used in *Thomas* and *Sherbert*.

Therefore, this court holds that Ohio Adm. Code 1501:31-15-02(U) is not an unconstitutional interference with the exercise of the defendant's religion.

Therefore, the motion to dismiss is overruled.

*Motion overruled.*