The STATE of Ohio

v.

BONTRAGER.

2008-Ohio-5651.]

Newton Falls Municipal Court.

No. CRB0700704.

Decided June 24, 2008.

**34**

Richard Schwartz, Newton Falls City Law Director, and Joseph Vingle, for the state of Ohio.

Adam Bontrager, pro se.

VIGORITO, Judge.

{¶ 1} This matter came on for trial on June 3, 2008. The defendant, Adam Bontrager, was charged under Ohio Adm.Code 3701–29–02(D) [1] with failure to comply with an order of the general health district based upon "no sewage treatment system shall create a public health nuisance or safety hazard."

{¶ 2} The evidence by the state was that the defendant purchased a parcel of property from a third party who had been ordered to replace the present septic system when that person "parceled" the property for sale to the defendant. When that property was transferred to the defendant, that requirement passed with the property and was now the obligation of the defendant. According to the state's witness, the allegation was that because of the property soil composition and area, the health district required an "off-lot" system that required an aeration system.

{¶ 3} During the course of the defendant's case, it became obvious that there was no factual dispute—the defendant, of the Amish community, admitted that he did not complete the replacement of the system, although he had begun the application process. Rather, the defendant explained that the septic system he was ordered to install, and all of the systems that would suffice under the Board

---

1. The complaint served upon the defendant utilizes the correct language to put the defendant on notice of the alleged offense; however, the complaint refers to Ohio Adm.Code 3701–29–07(C), which is incorrect; the language of the complaint is that found in 3701–29–02(D).

of Health regulations, required the utilization of electricity, which was prohibited by the defendant's religion. As such, this court considered defendant's trial defense as a motion to dismiss on the grounds that compliance would violate the defendant's free exercise of his religion.

{¶ 4} Initially, it should be noted that prosecution for failing to comply with the Board of Health regarding upgrading a sewage system is permitted under R.C. 3709.21. See *State v. Mann* (December 21, 2007), Trumbull App. No. 2007–T–0067, 2007 WL 4497443. The question, as ultimately stipulated, was whether the regulation infringes upon defendant's free exercise of religion under the First Amendment to the United States Constitution, applicable to the states via the Fourteenth Amendment to the United States Constitution and which sets forth: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof," and Section 7, Article I of the Ohio Constitution, which provides: "All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend * * * or maintain any form of worship, against his consent; and no preference shall be given, by law, to any religious society; * * * Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the General Assembly to pass suitable laws, to protect every religious denomination in the peaceable enjoyment of its own mode of public worship."

{¶ 5} Ohio has adopted the United States Supreme Court's three-part test as the proper standard to review a law or regulation when challenged under a freedom-of-religion constitutional argument. See *State v. Bontrager,* (1996) 114 Ohio App.3d 367, 683 N.E.2d 126, citing *Sherbert v. Verner,* (1963), 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965; and *State v. Schmidt* (1987), 29 Ohio St.3d 32, 29 OBR 383, 505 N.E.2d 627; *State v. Whisner* (1976), 47 Ohio St.2d 181, 1 O.O.3d 105, 351 N.E.2d 750. Those holdings direct the court to look, first, at whether the defendant's religious beliefs are sincerely held; second, whether the regulation at issue infringes upon a defendant's constitutional right to freely engage in his religious practices; and third, whether the state has demonstrated a compelling interest for enforcement of the regulation and whether the regulation is written in the least restrictive means to further that interest. See *Bontrager,* supra; *Humphrey v. Lane* (2000), 89 Ohio St.3d 62, 728 N.E.2d 1039. If the answer is "yes" to those questions, the court must then decide whether the state's interest is of "sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." See *Wisconsin v. Yoder* (1972), 406 U.S. 205, 214, 92 S.Ct. 1526, 32 L.Ed.2d 15.

{¶ 6} To determine the "sincerity" of the defendant's religious beliefs, the test is "whether a given belief * * * occupies a place in the life of its possessor

parallel to that filled by the orthodox belief in God" * * * it is more than a personal or philosophical belief. *Bontrager,* supra, citing *United States v. Seeger* (1965), 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, and *Wisconsin v. Yoder,* supra.

{¶ 7} The defendant testified that there are different "sects" (for lack of a better term) of the Amish—each has its own church and bishop based upon geography, i.e., where they reside in relation to the particular church. According to the defendant, while they all follow the same general religious beliefs, they all operate somewhat independently of each other. The defendant agreed that his particular church and bishop permit the possession of a telephone (in an outbuilding). If a member of his church is a construction contractor, that person is permitted to have a cell phone (only on the job). Members of the church are permitted to have gasoline-powered motors, which he has on his property and which operates a water pump for his drinking water, among other things. Conversely, while some sects allow the use of electricity, the defendant's church and bishop do not, and defendant testified that he would be expelled from the church if he complied with the Department of Health's regulation with regard to this particular septic system.

{¶ 8} The court notes that the defendant joined this particular church two years ago when he married and moved onto this particular piece of property. Nevertheless, he was willing to subject himself to this prosecution rather than violate that particular tenant of his church. Thus, the court finds that the defendant's religious beliefs in this instance are sincerely held.

{¶ 9} The second part of the test is whether the particular regulation infringes upon the defendant's constitutional right to the free exercise of his religion. Here, the regulation does not directly prohibit the defendant from engaging in certain activities or functions of his church; however, there is no question that compliance with the Board of Health's order regarding the off-lot septic system with its use of electricity would require the defendant to violate the order of his bishop and his church with regard to the use of electricity. As noted, he would be expelled from the church if he complied with the Board of Health. Consequently, compliance with the regulation will, albeit indirectly, infringe on the defendant's free exercise of his religion.

{¶ 10} The Ohio Supreme Court has held that "under Section 7, Article I of the Ohio Constitution, the standard for reviewing a generally applicable, religion-neutral state regulation that allegedly violates a persons right to free exercise of religion is whether the regulation serves a compelling state interest and is the least restrictive means of furthering that interest." See *Humphrey v. Lane,* 89 Ohio St.3d 62, 728 N.E.2d 1039. The state's interest in enforcing the septic-system regulations is illustrated by the testimony that the defendant's present

septic-system does not have enough land available for an "on-lot" leach line system and that it discharges into a ravine/stream. This court finds that the state's interest in preventing the discharge of untreated septic/sewage from being washed downstream in the surface waters and into the groundwater is compelling.

{¶ 11} Likewise, this court finds that the regulation at issue is "religion-neutral," in that, as noted above, while compliance would result in a violation of that particular rule of his church, it does not directly prohibit activities or functions required by the defendant's religion. Finally, there appears to be no less restrictive means of complying with the regulation. The state's witness testified that all of the off-lot systems with aerators currently available require electric service:

{¶ 12} The U.S. Supreme Court has noted that:

Activities of individuals, even when religiously based, are often subject to regulation[s] by the States in the exercise of their undoubted power to promote the health, safety, and general welfare, or the Federal Government in the exercise of its delegated powers.

*Wisconsin v. Yoder*, supra, 406 U.S. at 220, 92 S.Ct. 1526, 32 L.Ed.2d 15.

{¶ 13} Based on the foregoing, this court finds that the state's interest in prohibiting the discharge of untreated sewage upon the general public is of "sufficient magnitude" to override the particular prohibition of defendant's church in this instance. Therefore, defendant's motion to dismiss on the grounds that the state's regulations infringe on the defendant's constitutional right to free exercise of religion is hereby denied.

{¶ 14} With regard to the merits of the charge and based upon the defendant's admission at the hearing, the defendant is found guilty of failing to comply with the order of the general health district in allowing his sewage/septic system to create a public health nuisance and/or safety hazard as is prohibited under Ohio Adm.Code 3701–29–02(D).[2] The defendant is hereby sentenced to a $50 fine, plus court costs.

So ordered.

---

2. Both parties in this case addressed the issues as written in the complaint, i.e., whether or not the defendant complied with the orders of the health district and/or whether his septic system created a public-health nuisance, without regard to the incorrect Ohio Administrative Code numerical designation listed on the compliant. The defendant admitted that he did not comply with the order, but he argued that compliance was prohibited by his religion. The court hereby amends the numeric designation herein pursuant to Crim.R. 7(D) to correct that clerical defect.